UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| TOM BARNETT | CIVIL ACTION |
| VERSUS | NO. 17-133-RLB |
| MAGELLAN HEALTH, INC. PREVIOUSLY KNOWN AS MAGELLAN HEALTH SERVICES, INC. ALSO KNOWN AS MAGELLAN OF LOUISIANA | CONSENT |

## ORDER

Before the Court is the Motion to Compel Discovery Responses and for Attorney's Fees (R. Doc. 19) filed by Plaintiff on March 7, 2018. Defendant filed its Opposition (R. Doc. 23) on March 28, 2018.

**I.    Background**

Plaintiff initiated this litigation with the filing of his Complaint (R. Doc. 1) on March 9, 2017. Therein, Plaintiff alleges that his employment with Defendant was terminated in December 2015, despite alleged promises made by Defendant of continued employment. Plaintiff brings his claims pursuant to the Age Discrimination in Employment Act and La. R.S. 51:2231, *et seq.* More specifically, Plaintiff asserts that he began working for Defendant in July 2012 as a Senior Network Business Analyst of the Provider Network section, and in this role, created and prepared all Provider Network reports required by DHH. (R. Doc. 1 at 4). He alleges that in August 2015, though other employees were laid off, he was offered continued employment, but was subsequently terminated without warning in December 2015. (R. Doc. 1 at 5).

Defendant denies that it improperly discriminated against Plaintiff due to his age. (R. Doc. 10). Defendant also offers certain Affirmative Defenses and arguments in support of its

termination of Plaintiff, two of which being most pertinent to the discussion herein. First, Defendant raises an affirmative defense that Plaintiff's termination was based on a budgeting decision that led to the conclusion that Plaintiff's position could be eliminated because of automation of same. (R. Doc. 10 at 9). Second, although not raised in its affirmative defenses, Defendant argues that Plaintiff's termination was the result of a reduction in force because of Defendant's loss of a majority of the contract it had with Louisiana DHH. (R. Doc. 23 at 1).

Plaintiff propounded his Interrogatories and Requests for Production of Documents, at issue in this Motion, on June 9, 2017. (R. Doc. 19-2 at 2; R. Doc. 19-3; R. Doc. 19-6). Defendant provided its answers to the Interrogatories and Requests for Production on July 17, 2017 (R. Doc. 19-4; R. Doc. 19-7), and supplemental answers to the Interrogatories and Requests for Production on September 11, 2017 (R. Doc. 19-5; R. Doc. 19-8). The parties represent they attempted to resolve their differences, but were unable to do so, necessitating the filing of this Motion.

## II. Discussion

### A. Legal Standard

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The court must limit the frequency or extent of discovery if it determines that: "(i) the

discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

### B. Analysis

#### 1. Interrogatory No. 8

In Interrogatory No. 8, Plaintiff asks the Defendant to "identify, including name, address, telephone number, and employer, each and every person who, on behalf of Magellan, performed work on contracts with Louisiana DHH and who has been terminated, laid off, and/or whose employment with Magellan was not continued since August 1, 2015." (R. Doc. 19-3 at 10). Defendant objected to this interrogatory, arguing it was "overly broad, unduly burdensome, and not reasonably limited in scope because it seeks information that is not proportional to the needs of the case or probative of the claims and defenses in the case." (R. Doc. 19-5 at 8). Plaintiff argues that this information is relevant because Defendant has argued that Plaintiff's termination was part of a reduction in force that began in August 2015. (R. Doc. 19-2 at 9). In response,

Defendant re-iterates its position that the request is overly broad and unduly burdensome. (R. Doc. 23 at 3-4). Defendant also notes that it offered to supplement its response to Interrogatory No. 8 with the "names, job titles, and ages of any former Magellan employees who performed task(s) in support of Defendant's contract with DHH who were laid off between August 2015 and February 2016 because of the RIF implemented by Defendant due to the loss of the majority of Defendant's contract with Louisiana DHH." (R. Doc. 23 at 4).

The information sought by Plaintiff in Interrogatory No. 8 is, at the very least, relevant to the discovery of potentially similarly-situated employees or former employees of Magellan, as well as to Magellan's affirmative defense that Plaintiff was terminated as part of a reduction in force. To the extent it requests personal information, the responses to Interrogatory No. 8 can be designated confidential pursuant to the Protective Order in place. *See* R. Doc. 13.

To avoid any confusion as to whether the Interrogatory covers those never employed by Magellan, Interrogatory No. 8 is appropriately limited to employees / former employees who performed tasks in support of Magellan's contract with Louisiana DHH. Lastly, the temporal scope of Interrogatory No. 8 is also overly broad. Plaintiff alleges that terminations began in August of 2015, and that he was terminated in December 2015. (R. Doc. 1 at 5-6). The Court finds it appropriate, therefore, to limit the temporal scope of Interrogatory No. 8 from August 1, 2015 to August 1, 2016. Accordingly, Interrogatory No. 8 will be limited to the "names, address, and telephone number of each and every employee / former employee of Magellan who performed tasks in support of Magellan's contract with Louisiana DHH and who has been terminated, laid off, and/or whose employment with Magellan was not continued between August 1, 2015 through August 1, 2016."

**IT IS ORDERED** that Plaintiff's Motion to Compel (R. Doc. 19) is **GRANTED** as to Interrogatory No. 8.

### 2. Interrogatory Nos. 16, 18, 20, and 21

Plaintiff argues that Interrogatory Nos. 16, 18, 20, and 21 seek information related to Defendant's Affirmative Defenses and are, therefore, discoverable. Defendant, with regard to Interrogatory Nos. 18 and 21, suggests that it offered to provide responses so long as Plaintiff stipulated that Defendant would not waive any attorney client or work product privilege. (R. Doc. 23 at 5). The following interrogatories and responses are at issue:

> Interrogatory No. 16: Please identify and describe in detail the claims and/or portions of claims asserted by Tom Barnett that "are barred because they are beyond the scope of Plaintiff's administrative charge" as set forth and alleged in Magellan's Affirmative Defense and/or Avoidance No. 9.
>
> Answer to Interrogatory No. 16: Objection. This interrogatory seeks the legal reasoning and theories of Defendant's contentions. Defendant is not required to prepare the Plaintiff's case.
>
> Interrogatory No. 18: Please identify and describe in detail any and all claims that Magellan alleges "are barred by the applicable statute of limitations and/or prescriptive period" as set forth in your Affirmative Defense and/or Avoidance No. 14.
>
> Answer to Interrogatory No. 18: Objection. This interrogatory seeks the legal reasoning and theories of Defendant's contentions. Defendant is not required to prepare the Plaintiff's case.
>
> Interrogatory No. 20: Please identify and describe in detail any and all facts on which Magellan relied to claim in Affirmative Defense and/or Avoidance No. 23 that "Plaintiff's claims should be barred and/or reduced on the doctrine of contributory and/or comparative fault."
>
> Answer to Interrogatory No. 20: Objection. This interrogatory seeks the legal reasoning and theories of Defendant's contentions. Defendant is not required to prepare the Plaintiff's case.
>
> Interrogatory No. 21: Please identify and describe in detail any and all facts on which Magellan relied to claim in Affirmative Defense and/or Avoidance No. 25

> that Tom Barnett "has failed reasonably to mitigate his damages, if any, by reasonable diligence to seek and obtain comparable employment elsewhere."
>
> <u>Answer to Interrogatory No. 21</u>: Objection. This interrogatory seeks the legal reasoning and theories of Defendant's contentions. Defendant is not required to prepare the Plaintiff's case. Defendant further objects to this interrogatory as premature.

(R. Doc. 19-5 at 12-14). Defendant does not dispute that it raised the affirmative defenses and/or avoidances that are cited by Plaintiff in each of these discovery requests. Further, Fed. R. Civ. P. 26(b)(1) specifically contemplates a party's ability to obtain discovery regarding information relevant to any party's "claim or defense," which would include affirmative defenses raised by a defendant in its Answer. Thus, at their core, Interrogatory Nos. 16, 18, 20, and 21, are relevant and within the scope of permissible discovery.

Defendant re-iterates its objection to Interrogatory No. 21 that it is improper because it "seeks the legal reasoning and theories of Defendant's contentions," also asserting that "Defendant's trial strategy is privileged." (R. Doc. 23 at 5). While Defendant may be correct in its assertions, those statements have no application to the analysis herein because Plaintiff's interrogatories are limited to "any and all facts" that Defendant relied upon in asserting Affirmative Defense and/or Avoidance Nos. 9, 14, 23, and 25. Nowhere does Plaintiff ask for a written explanation of Defendant's legal reasoning, and the possibility that providing the facts upon which a party relies to make a claim or defense might help to illuminate a party's position is part of what the discovery process is intended to accomplish.

"Inquiry into the facts underlying an opponent's affirmative defenses and the application of law to the facts is within the scope of discovery." *King v. Univ. Healthcare Sys., L.C.*, 2008 WL 11353694, at *1 (E.D. La. Oct. 31, 2008). Contention interrogatories are specifically permitted by Rule 33, which provides that "[a]n interrogatory is not objectionable merely

because it asks for an opinion or contention that relates to fact or the application of law to fact." Fed. R. Civ. P. 33(a)(2). Accordingly, an interrogatory may reasonably ask for the material or principal facts which support a contention, including those asserted in affirmative defenses. As with any interrogatory, however, a contention interrogatory may be overly broad where it seeks "each and every" single fact upon which a party bases its case. *See*, *e.g.*, *IBP, Inc. v. Mercantile Bank of Topeka*, 179 F.R.D. 316, 321 (D. Kan. 1998). Courts have "tended toward a middle ground, requiring parties to explain the factual bases for their contentions by providing the material facts upon which they will rely, but not a detailed and exhaustive listing of all of the evidence that will be offered." *Linde v. Arab Bank, PLC*, 2012 WL 957970 (E.D.N.Y. Mar. 21, 2012) (citing cases).

It is within the scope of discovery for Plaintiff to request that Defendant identify the facts that support its affirmative defenses, which is the issue before the Court in Plaintiff's Motion to Compel. Defendant's contention that these interrogatories are beyond the permissible scope of discovery because they seek legal reasoning or trial strategy is without merit. Nonetheless, Plaintiff's request for "any and all" facts is overbroad, and the Court will limit Interrogatory Nos. 18 and 21 to "material facts upon which Defendant may rely to establish Affirmative Defense and/or Avoidance No. [14 or 25, respectively]."

The Defendant's request for this ruling to provide that Defendant's responses "will not waive any attorney client or work product privilege" is similarly without merit. Again, the Court does not read Plaintiff's Interrogatory Nos. 16, 18, 20, or 21 to request anything other than the facts supporting Defendant's affirmative defenses. "[F]acts are not protected by the attorney-client privilege or the work-product doctrine. Likewise, the underlying facts are not privileged strictly because they were provided to the deponent by counsel." *Quenoit-Kornegay v. Blitz*

7

*U.S.A., Inc.*, 2012 WL 6045558, at *2 (S.D. Miss. Dec. 5, 2012). *See also Thurmond v. Compaq Computer Corp.*, 198 F.R.D. 475, 480 (Oct. 18, 2000) ("A fair number of cases hold that the attorney-client privilege does not reach facts within the client's knowledge, even if the client learned those facts through communications with counsel."). Accordingly, the Court will not entertain Defendant's request.

As it pertains to Interrogatory Nos. 16 and 20, Defendant represents in its Opposition that it withdraws Affirmative Defenses and/or Avoidances Nos. 9 and 23 from its Answer, which are the subject of those interrogatories. (R. Doc. 23 at 2 n.1). In conjunction with this representation, the Court is simultaneously issuing an Order granting Defendant's withdrawal of these affirmative defenses. Thus, Plaintiff's request with regard to Interrogatory Nos. 16 and 20 is moot.

**IT IS ORDERED** that Plaintiff's Motion to Compel (R. Doc. 19) is **DENIED as moot** as to Interrogatory Nos. 16 and 20, and **GRANTED in part** and **DENIED in part** as to Interrogatory Nos. 18 and 21.

### 3. Requests for Production Nos. 11 and 12

Plaintiff seeks to compel responses to Request for Production Nos. 11 and 12, wherein Defendant objected and noted that it was withholding responsive documents in light of its objection pursuant to Fed. R. Civ. P. 34(b)(2)(C). The scope of permissible document production is parallel to the general scope of discovery as Fed. R. Civ. P. 34(a) provides a party the ability to request document production "within the scope of Rule 26(b)." The following Requests for Production by Plaintiff and responses by Defendant are at issue:

> Request for Production No. 11: Please produce any and all files, documents, and/or communications that identify all persons who since July 16, 2012 have performed the same job duties and/or responsibilities that Tom Barnett performed during his employment with Magellan.

> Response to Request for Production No. 11: Defendant objects to this request for production as beyond the permissible scope of Rule 26, overly broad, unduly burdensome, and not reasonably limited in scope because it seeks information that is not proportional to the needs of the case or relevant to the claims and defenses of the parties.
>
> Documents responsive to this request are being withheld by Defendant on the basis of the foregoing objections.
>
> Request for Production No. 12: Please produce the complete employment file of all persons who since July 16, 2012 have performed the same job duties and/or responsibilities that Tom Barnett performed during his employment with Magellan.
>
> Response to Request for Production No. 12: Defendant objects to this request for production as beyond the permissible scope of Rule 26, overly broad, unduly burdensome, and not reasonably limited in scope because it seeks information that is not proportional to the needs of the case or relevant to the claims and defenses of the parties.
>
> Documents responsive to this request are being withheld by Defendant on the basis of the foregoing objections.

(R. Doc. 19-8 at 10-11). Plaintiff argues that "the identities and work history of employees who performed his job duties are relevant and discoverable because these employees could be 'similarly situated' to Tom Barnett." (R. Doc. 19-2 at 10). Plaintiff also states that "[t]he only way to determine if they are in fact 'similarly situated' is by identifying these individuals and reviewing their employment files." (R. Doc. 19-2 at 10).

Defendant responds that Request for Production No. 11 "necessarily includes thousands of pages of information about employees performing any type of job, working on different contracts, in different locations, subject to different job requirements, with different experiences, and different qualifications, so long as that person performed at least one similar job duty or responsibility as Tom Barnett, none of which is relevant to this lawsuit." (R. Doc. 23 at 6). With regard to Request for Production No. 12, Defendant argues that the list of individuals sought is "seemingly unlimited." (R. Doc. 23 at 8).

Request for Production No. 11, as written is overly broad. Plaintiff is seeking information potentially applicable to non-employees, independent contractors, employees working on other contracts, in addition to the production of every single document that may identify one of those persons, regardless of the context. The scope of Request for Production No. 11 is well beyond the reasonable scope of discovery contemplated by Fed. R. Civ. P. 26. Accordingly, Plaintiff's Motion to Compel (R. Doc. 19) will be denied as to Request for Production No. 11.

Request for Production No. 12, on the other hand, is more limited in scope insofar as it requests only the employment file, as opposed to a wide breadth of irrelevant documents. The Court agrees that Plaintiff is entitled to information that would assist in the discovery of similarly situated employees, and Defendant has represented that it produced the employment files of two employees responsive to this request. (R. Doc. 23 at 8). Request for Production No. 12 is, therefore, within the scope of discovery and, to the extent any additional files exist, Defendant shall identify the individuals and produce the respective employment files, pursuant to the Protective Order already in place. (R. Doc. 13).

In light of the briefing, the Court will provide some guidance to the parties in complying with this Order. The Court recognizes that a broad interpretation could include a significant number of individuals, many of whom would be irrelevant to this litigation. At the same time, it should not be read so narrow as to only apply to those employees considered "nearly identical" to Plaintiff.[1]

---

[1] Defendant cites jurisprudence that held that "similarly situated" and "nearly identical" are interchangeable terms, and that "nearly identical" has been found where employees "held the same job responsibilities, shared the same supervisor [,] or had their employment status determined by the same person, and have essentially comparable [disciplinary] histories." (R. Doc. 23 at 7) (citing *Turner v. Kansas City Southern Ry. Co.*, 675 F.3d 887, 893 (5th Cir. 2012).

This is for at least two reasons. First, generally "the scope of discovery is broad" and "a court is afforded broad discretion when deciding discovery matters." *Crosby v. Louisiana health Service and Indem. Co.*, 647 F.3d 258, 261-62 (5th Cir. 2011). Second, the "similarly situated" inquiry "depend[s] substantially on the facts and context of the case," "is case-specific," and "requires [the court] to consider 'the full variety of factors that an objectively reasonable… decisionmaker would have found relevant in making the challenged decision.'" *Lindquist v. City of Pasadena*, 669 F.3d 225, 233 (5th Cir. 2012) (quoting *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1203 (11th Cir. 2007).

The record is not fully developed at this point, and there is not enough information before the Court to make a distinct determination on the characteristics that would constitute a similarly situated employee. Rather, the inquiry at this point is broad, and Plaintiff's intent to discover employees that are or were similarly situated includes the discovery of employees that could potentially be similarly situated employees for one reason or another. The inquiry is not so broad, however, so as to include each and every employee that also performed a single job responsibility that Plaintiff also performed.

Courts have held that various factors influence a finding of whether an employee or employees are similarly situated for purposes of the ADEA and a plaintiff's burden. *See Barrientos v. City of Eagle Pass, Tex.*, 444 Fed. App'x 756, 759 (5th Cir. 2011) (citing *Shackelford v. Deloitte & Touche, L.L.P.*, 190 F.3d 398, 405-06 (5th Cir. 1999)); *Gilbert v. Brookshire Grocery Co.*, 354 Fed. App'x 953, 954 (5th Cir. 2009) (finding plaintiff had failed to meet her burden of proving employee was "similarly situated" where plaintiff "provided no evidence that [employee's] position, duties, qualifications or pay rate" were similar to plaintiff's"); *Ortiz v. Shaw Grp., Inc.*, 250 Fed. App'x 603, 606-07 (5th Cir. 2007) (finding

employees not similarly situated where they held different job titles, worked in different management levels, had different job responsibilities wherein the non-terminated employee's job responsibilities aligned with the defendant's business decision, and non-terminated employee had prior work experience that aligned with the defendant's business decision).

Defendant seems to suggest that the Court limit the interpretation of "similarly situated" to only employees who worked on its contract with Louisiana DHH when it argues that its objections are appropriate because the request "necessarily includes thousands of pages of information about employees… working on different contracts." (R. Doc. 23 at 6). The Court is not convinced, however, that only employees performing tasks in support of Defendant's contract with Louisiana DHH are relevant. This is in part because Defendant has argued both that Plaintiff's termination was the result of (1) a reduction in force due to the loss of the majority of the contract with DHH, and (2) elimination of the position due to automation. (R. Doc. 10 at 9; R. Doc. 23 at 4). Perhaps if the only alternative, non-discriminatory justification for the termination was a reduction in force stemming from the loss of the contract on which Plaintiff was employed, the limitation may be appropriate. But Defendant has alleged as an affirmative defense that Plaintiff's termination "was based on a reasonable factor or factors other than age, namely, that Plaintiff's position could be automated, and Defendant's budgeting decisions which lead to the conclusion that because Plaintiff's position could be automated, it could be eliminated." (R. Doc. 10 at 9). Whether employees working on other contracts were also terminated as a result of automation is relevant to a determination of whether Defendant has an alternative, non-discriminatory justification for Plaintiff's termination.

Likewise, there is not enough information before the Court to conclude that only Senior Network Business Analysts are relevant to the inquiry. The Court does note, however, that

Plaintiff has agreed to limit certain deposition topics to Senior Network Business Analysts in the context Defendant's Motion for Protective Order.

Because Defendant has also alleged that Plaintiff's termination was a result of a reduction in force due to the loss of the majority of Defendant's contract with Louisiana DHH, information regarding other employees who were not Senior Network Business Analysts, but who also performed work on Defendant's contract with Louisiana DHH would be relevant for proving or dis-proving this affirmative defense, as well as potential evidence for the issue of pretext.

For similar reasons, the Court is unable to limit "similarly situated" employees to only those who worked with the same supervisor or within the same division or section of the company. In *Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009), relied upon by Defendant, the court noted that the justification for its finding that "[e]mployees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff general will not be deemed similarly situated" was "because we require that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken 'under nearly identical circumstances.'" *Lee*, 574 F.3d at 259-260. "Nearly identical circumstances" can be—and has been—interpreted to mean employees who worked under the same supervisor, especially where the allegation is that the employees committed similar violations, but were treated differently in terms of termination of employment or workplace conditions, as in the *Lee* case. That does not mean, however, that "nearly identical circumstances" requires a common supervisor.

The purpose of Request for Production No. 12 is to obtain information as to similarly situated employees that were either terminated, as was Plaintiff, or not terminated. Accordingly,

13

the discovery of potentially similarly situated employees, and the handling of their employment in light of the affirmative defenses raised by Defendant, are relevant and within the scope of discovery permitted under Fed. R. Civ. P. 26. Request for Production No. 12 is modified to the production of "the complete employment file of all employees or former employees of Defendant similarly situated to Plaintiff since July 16, 2012."

The parties are directed to confer regarding Request for Production No. 12 and the scope of material reasonably expected to be produced. The Request for Production is poorly worded and subject to multiple interpretations. In addition, it leaves certain undefined discretion to the Defendant in determining what constitutes the "same" job responsibilities or duties. At a minimum, these issues should have been resolved or narrowed in the attorneys' conference prior to filing the instant motion.

**IT IS ORDERED** that Plaintiff's Motion to Compel (R. Doc. 19) is **DENIED** as to Request for Production No. 11.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Compel (R. Doc. 19) is **GRANTED** as to Request for Production No. 12 consistent with the instructions set forth above.

### 4. Request for Production Nos. 22, 23, 24, and 25

Request for Production No. 23 is the only document request at issue in this group as Defendant has represented it "has produced all documents responsive to" Request for Production Nos. 22, 24, and 25. (R. Doc. 23 at 9). To the extent that anything in this decision would render additional documents responsive to Requests for Production Nos. 22, 24, and 25, Defendant shall supplement its production in accordance with its continuing duty under Fed. R. Civ. P. 26(e).

In Request for Production No. 23, Plaintiff seeks "any and all files, documents, and/or communications that support the factual allegations contained in your Affirmative Defense

14

and/or Avoidance No. 5 that 'Plaintiff has failed to exhaust and/or timely exhaust his administrative remedies.'" (R. Doc. 19-6 at 13). Defendant objected, asserting that the "request seeks the legal reasoning and theories of Defendant's contentions" and "Defendant is not required to prepare the Plaintiff's case." (R. Doc. 19-7 at 14).

This is the same objection Defendant asserted in response to Interrogatory Nos. 16, 18, 20, and 21. For the same reasons set forth in Section II.B.2 above, Plaintiff's Motion to Compel (R. Doc. 19) as to Request for Production No. 23 is granted. *See King v. Univ. Healthcare Sys., L.C.*, 2008 WL 11353694, at *1 (E.D. La. Oct. 31, 2008) ("Inquiry into the facts underlying an opponent's affirmative defenses and the application of law to the facts is within the scope of discovery."). Even were Defendant's objection to have merit, Defendant has advanced no argument in support of its objection, which alone would be fatal to its success before the Court. *See Harrison v. Wells Fargo Bank, N.A.*, 2016 WL 1392332, at *6 (N.D. Tex. Apr. 8, 2016) ("[T]he party resisting discovery must show specifically how each discovery request at issue is not relevant or otherwise objectionable, and an objection party must, in responds to a motion to compel, urge and argue in support of his objection to a request, or the objection will be waived or deemed abandoned.").

**IT IS ORDERED** that Plaintiff's Motion to Compel (R. Doc. 19) is **GRANTED** as to Request for Production No. 23, and DENIED as moot as to Request for Production Nos. 22, 24, and 25.

### III.    Conclusion

Based on the foregoing,

**IT IS ORDERED** that Plaintiff's Motion to Compel (R. Doc. 19) is **GRANTED IN PART** and **DENIED IN PART**.

15

**IT IS FURTHER ORDERED** that Defendant must supplement its responses to Plaintiff's Interrogatory Nos. 8, 18, and 21, and Request for Production Nos. 12 and 23, as detailed within the body of this Order, within **14 days** of the date of this Order.

**IT IS FURTHER ORDERED** that the Motion is denied as to Plaintiff's Interrogatory Nos. 16 and 20, and Request for Production Nos. 11, 22, 24, and 25.

**IT IS FURTHER ORDERED** that the parties shall bear their own costs.

Signed in Baton Rouge, Louisiana, on June 1, 2018.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**